## Florence v. Lyons' Admr.

(Decided December 5, 1922.)

### Appeal from Harrison Circuit Court.

1. Gifts—Burden of Proof.—One who claims a gift of two promissory notes from an aged and infirm relative, has the burden of showing that the giver had mental capacity sufficient to understand his business relations and to appreciate what he was doing when making the gift, and if he fails to sustain such burden the notes will be restored at the suit of the giver, his committee or administrator.

2. Pleading—Amendments.—A court may, in the exercise of a sound decretion, allow the filing of amended pleadings to conform to the proof.

3. Appeal and Error—Burden of Proof.—At a trial appellee moved for the burden, to which motion appellant objected; the court sustained the objection of appellant and adjudged appellant the burden without appellant requesting same. Appellant was in no position to complain that the court adjudged the burden on him.

W. S. CASON for appellant

M. C. SWINFORD and HANSON PETERSON for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

A. J. Lyons, a man seventy-four years of age and in feeble health, was the owner of two notes, one for $2,000.00 against Lawrence Rankin, and the other for $275.00, against Frank Kennedy. On each note there was past due interest. Lyons had never been married and had no children. For many years he had lived with his sister, Cynthia Morrison. During that time he was in good circumstances financially. He had quite a bit of real property and some personal property outside of a great number of real estate notes. For some time before his death, however, he had very little property left and it consisted chiefly of twenty-two (22) acres of hillside land of no great value, the Rankin note for $2,000.00, the Kennedy note for $275.00, and he had in addition a deposit of $159.00 in the bank. He and his sister, Mrs. Morrison, decided to go to appellant, George Florence's, to make it their home. Mrs. Florence was the daughter of Mrs. Morrison and the niece of A. J. Lyons. After staying there several months Mrs. Morrison decided she wanted to go to Cynthiana to live with some of her children because she could have more conveniences in the town, and with her A. J. Lyons also went.

Appellant Florence rented a house for them and they left his place and lived in Cynthiana. While Lyons was living at the house of appellant Florence and was in feeble health, both physically and mentally, the two notes which he had passed from under his control. Just how this happened is hard to tell. The old gentleman testified before his death that he did not know how the notes got into the possession of appellant Florence and that he did not authorize anyone to take the notes and did not know that they had been taken from him until after he had moved to Cynthiana; that he carried the notes in an envelope in his coat pocket and that while he was at the home of Florence he left his coat hanging in his room near his bed; that he did not give the notes to Florence nor to anyone, nor authorize anyone to collect the same, and in fact did not know who had the notes until long after they had been collected by Florence.

On the other hand, Florence admits he had the notes and collected them and converted the proceeds to his own use. He says, however, that while A. J. Lyons was living at his house they were on the best of terms; that the old gentleman began to talk about the notes one day and told appellant Florence that he proposed to give these notes to him, and in pursuance to the statement reached up and took from the pocket of his coat, which was hanging on the bed or near it, the two notes and indorsed them and handed them to Florence; that in a few weeks he collected the amount of the Rankin note from Rankin, giving Rankin credit for Lyons' grocery account, as directed by Lyons. This account amounted to $249.00 and that he did not collect any interest; that he later collected the other note of $275.00, without interest. He also testified that after he received the notes Mr. Lyons asked him for the notes, and that he told him positively he would not surrender the notes; that Lyons had given them to him and he was going to keep them, to which Mr. Lyons replied that some of the other children were kicking. Did Lyons have capacity to make a gift at the time he attempted to transfer the notes? We think not. We find the rule as set forth in 28 C. J., pp. 672, to be as follows:

"In the absence of evidence tending to show the contrary the capacity of the donor to make a gift will ordinarily be presumed, and the burden of proving incapacity is on the one challenging the validity of the gift

on that ground. This is true, notwithstanding the donor is insane, if his insanity is merely of an intermittent or temporary nature. Where a person previously incapacitated claims a gift, it is incumbent upon him to show that the gift was made subsequent to the removal of his incapacity."

In discussing fraud or undue influence as affecting gifts the same text, at section 72, says:

"And where the circumstances are such as to suggest fraud and undue influence, the burden is on the donee to overcome the presumption of fact arising therefrom. Thus, where the relations between the parties appear to be of such a character as to render it certain that they do not deal on terms of equality, but that either on the one side, from superior knowledge of the matter derived from a fiduciary relation, or from overmastering influence, or, on the other hand, from mental weakness, or dependent confidential relation, unfair advantage in a transaction is rendered probable, then the burden is shifted, the transaction is presumed to be void, and it is incumbent on the stronger party to show affirmatively that no deception was practiced, no undue influence was used, and that all was fair, open, voluntary and well understood."

From the evidence it is plain that A. J. Lyons in his younger days was a very good business man and had a reasonable amount of this world's goods. He was shrewd and capable, and handled a great many notes, but as his years advanced he became feeble in health and mentally deficient. We think the evidence shows that Lyons was of unsound mind at the time he attempted to make the gift. As some of the witnesses testify he could remember well on some days and other days he was practically without mind. He had no way of supporting himself and was like a boy, going from place to place. He had no settled home, and when he got dissatisfied at the home of one of his relatives he would pick up and go to another. All his wealth slipped away from him save these two notes and a small bank account and a little piece of land. He had given, according to the evidence of appellant Florence, a $750.00 note to Tommie Florence, wife of appellant Florence, some years before, but there is connected with this gift some mystery. Some of the evidence hints that appellant Florence had threatened the old gentleman with prosecution for a felony of some kind in order to induce him to

give him the note. Other witnesses say that A. J. Lyons was of sound mind and capable of attending to business, but the overwhelming weight of the evidence, when considered in the light of all the circumstances, is to the effect that Lyons was mentally incompetent to manage his estate. Who at the age of seventy-four years, without a home or a place to lay his head, would deliberately give away almost all of his estate to an individual who before that time had done him no special favor and to whom he had given on a former occasion a note for $750.00? Would any sane man give away a $2,000.00 note and a $375.00 note, the major part of his estate, to his nephew by marriage without some undue influence being exerted upon him, and especially when he was about to move away and find another place to live? Upon what could a reasonable person, sick in body, depend for sustenance in his old age when he gave away practically all of his principal and income? This act alone, if it occurred just as related by Florence, would be amply sufficient to discredit the whole proceeding and to justify a court in setting aside the alleged gift. The old gentleman was as pliant in the hands of young Mr. Florence as if he had been a child of tender years. He did not possess mental capacity sufficient to engage in such transactions or to make his gift valid, and whether Florence unduly influenced him or not had little to do with it in this case, for he knew the weak mental state of the donor. The jury found the facts against Florence and returned a verdict for $1,930.00 the amount due from Florence to the old gentleman, with interest from November, 1918. This verdict is abundantly supported by the evidence and must be sustained.

(2) Complaint is made that the trial court allowed appellees to file an amended reply setting forth the mental incapacity of A. J. Lyons at the time and before the alleged gift of the two notes to appellant Florence. Later and perhaps upon the same day appellees filed an amended petition setting forth the same facts, and the affirmative allegations of this amended petition were by agreement of the parties traversed of record. While it may not have been proper to set forth such new matter in the reply or amended reply, no objection could be made to setting forth such cause of action in an amended petition to conform to the proof.

The few errors occurring in the introduction of evidence of which appellant complains were of such unimportance as to be and are harmless.

Complaint is made also that appellant was required by the court to assume the burden. While we think the trial court was correct as a matter of law in his ruling upon this question, it further appears that the appellee moved the court to grant him the burden, to which motion the appellant objected, and thereupon the court granted the burden to appellant although appellant did not move for the burden. Having objected to appellee having the burden it must be assumed that appellant at the time sought the burden, for unless it was granted appellee there was no other party to the cause upon whom it could have rested save appellant. Under the facts appellant is in no position to complain.

No error to the prejudice of appellant having been committed, the judgment is affirmed.

Judgment affirmed.