# Seceshia Everly's Adm'r (Ferguson) et al. v. Maurice Everly's Adm'r (Eaton) et al.

Nov. 12, 1943.

E. B. Anderson and John B. Anderson for appellants.

Claude E. Smith and W. W. Kirtley for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Maurice Everly died intestate, a citizen and resident of the town of Island, McLean County, in August, 1938. He was survived by his wife who was about four years his senior, she dying in November, 1940, intestate and a resident of the same town and county. The only

real property of which the husband was seized at the time of his death, that the record discloses, was a small area of vacant land producing no income.

On October 25, 1937, Maurice Everly had on deposit in the Island Deposit Bank of Island, Kentucky, according to the pleadings, $1,827.95. He was then in bad health and between 75 and 80 years of age and was unable to work and unable physically to pursue his former occupation of operating a sawmill, his ailments confining him to his home. Though married since 1900 there were no children born as a result thereof and the only relatives he had were collateral kindred. His wife appears to have owned the little cottage in which they resided but she, as stated, was four years older than her husband, and impaired in health. According to the proof the deceased husband sent for appellant, Paul Ferguson, his wife's nephew, who was an official in the First Owensboro Bank and Trust Company of Owensboro, Kentucky, and stated to him that he wanted to arrange his deposit account so as to allow both himself and his wife to draw checks signed by them respectively in defraying the family expenses, and for a provision that upon the death of either the balance of the deposit that might remain should go to the survivor.

Ferguson knew that the bank at Island wherein the money was deposited did not carry insurance under the federal statute and he suggested that part of the account be deposited with the First Owensboro Bank and Trust Company and part with the Farmers' and Merchants' Bank of Livermore, Kentucky, under an arrangement whereby the desires of the deceased husband might be carried out. Both the Owensboro and the Livermore Banks did carry insurance so as to protect depositors up to the maximum amount of $5,000. That arrangement was then made pursuant to authority given Ferguson, but which was evidenced by writings duly signed by each of the married couple. No administrator was appointed for the estate of the husband but his surviving wife paid his burial expenses amounting to $350, erected a monument at his grave at the cost of $85 and paid some debts, chief among which was the doctor's bill, but the amount of those debts is not disclosed by the record. The great bulk of the deposits in the Owensboro and Livermore banks were on time certificates, or in savings accounts, but with provision whereby checking accounts could be arranged by giving proper notice, there being

a small checking account left in the Island Deposit Bank of Island. Pursuant to that arrangement $1,000 was deposited in the Owensboro bank, and $622.66 in the Livermore bank.

After the death of Mrs. Everly in 1940, the appellee, Almon Eaton, was appointed administrator of the estate of the husband who had died, as we have seen, two years prior thereto. He filed this equity action in the McLean Circuit Court against appellee, the administrator of the deceased wife, and the collateral heirs of the husband, seeking a settlement of the latter's estate and in his petition he alleged the foregoing facts and charged that Mrs. Everly, before her death, had spent and consumed a large part of her husband's cash on hand at the time of his death during the two years she survived him, and which was (as alleged) without authority and for which her estate was liable. Judgment was sought to be recovered for the amount so spent by her over and above her husband's debts and her distributive share in his personal estate.

The answer of defendant denied the material averments of the petition and pleaded the transaction entered into on October 25, 1937, whereby the surviving wife·obtained title to the entire deposits upon her husband's death. The answer also set up the wife's exemptions, the amount of funeral expenses of her husband and the cost of the monument to his grave. It also alleged an indebtedness of the attending physicians of her husband but did not specify the amount of their claims. The reply of plaintiff alleged that the agreed arrangements whereby the money on deposit should go to the survivor was invalid and void for want of mental capacity on the part of the husband to enter into it. Such affirmative matter was denied thus forming the issues. On motion of plaintiff the issue of fact as to the mental condition of the husband when the survivorship arrangement was entered into was transferred to the ordinary docket and submitted to a jury and it returned this verdict: "We, the jury, find that Maurice Everly was of unsound mind on October 23 and 25, 1937." The court then made a calculation and rendered judgment in favor of plaintiff against the representative of the wife's estate for the sum of $258.50, which the court declined to set aside on defendant's motion for a new trial, followed by the filing of the record in this court with a motion for an appeal, which is now sustained.

A number of grounds are relied on in the motion for a new trial, chief among which are (1) error of the court in overruling appellant's motion for a directed verdict finding the husband of sufficient mental capacity to enter into the attacked transaction at the time it was done, and (2) erroneous instruction of the court in defining sufficient mentality of the husband to enter into the survivorship transaction. That such a transaction is sufficient to create the right of survivorship was upheld by this court in the recent case of Bishop v. Bishop's ex'x, 293 Ky. 652, 653, 170 S. W. (2d) 1. Therefore, if the husband was mentally capacitated according to the legally declared measuring rule when he entered into the survivorship transaction, then plaintiff's entire cause of action fails. If, however, he did not possess the requisite mental capacity for entering into the particular transaction, then the wife's estate should be credited with her distributive share in her husband's deposit accounts, plus the amount of all his indebtedness, including burial expenses, the cost of the monument to his grave (though made double for himself and wife) and physicians' bills which most probably would consume the entire remnant deposit account at the time of the husband's death.

Turning now to the only two material errors above— as we conclude—we are of the opinion that the court did not err in overruling defendant's motion for a peremptory instruction on the issue submitted to the jury. It is true that the testimony of defendant, Paul Ferguson, touching the mental condition of the husband at the particular time the complained of transaction was made and agreed to was the only proof offered by either side upon the condition of the husband's mind at that particular time. It was to the effect that he fully comprehended what he was doing and which was pursuant to a desire he had formed prior thereto, and for the execution of which he had sent for his wife's nephew.

However, the nurses who waited upon him prior to and succeeding the time of that transaction, as well as the only physician who testified in the case, stated that his mind frequently was wandering to such an extent as to indicate mental impairment disqualifying him from entering into such a transaction which we are convinced made an issue triable by jury, and which the court was not authorized to determine for itself although the evidence as to the mental condition of the husband at the immediate time of entering into the attacked transaction

may have been sufficient to sustain it. Among the many cases sustaining that view are the late ones of Stege v. Stege's Trustee, 237 Ky. 197, 35 S. W. (2d) 324, and Jefferson Standard Life Ins. Co. v. Cheek's Adm'r, 258 Ky. 621, 80 S. W. (2d) 518. Either prior or subsequent occasions of evidence of imbecility when remotely removed from the particular transaction under consideration would most probably not come within that rule, but when such conditions of mind are shown both preceding and following the attacked transaction are so near to it in point of time the rule seems to be clearly established that a directed verdict should not be given. Therefore, we conclude that ground (1) is unavailable.

On the other hand it is quite apparent that ground (2) is meritorious, since the complained of instruction clearly submits an improper rule for measuring the necessary capacity required in this and other like cases. Only two instructions were given by the court—numbers (1) and (2). Number (1) said to the jury: "The court instructs the jury that if they believe from the evidence in this proceeding that the mind of Maurice Everly had, on account of any infirmity or weight of age, on October 23rd and 25th, 1937, become so unsound as to render him incompetent to manage his estate, you will, by your verdict, so find." While number (2) was couched in this language: "If you believe from the evidence that Maurice Everly was, on October 23rd and 25th, 1937, competent to manage his estate, you will so state in your verdict." It will thus be seen that the measuring stick for estimating the requisite mental capacity to enter into the attacked transaction was, sufficiency of mind to manage his estate and which is the inquiry made when a committee is sought for one who is so mentally incompetent—i. e. to manage his estate. But the inquiry here was and is, whether or not the alleged incompetent possessed at the time sufficient mentality "to know the nature, character and effect of the transaction in which he was engaged at the time." See Stanley on Instructions, page 497, Section 404. The quoted language is taken from an instruction given in the case of Florence v. Lyon's Adm'r, 196 Ky. 697, 245 S. W. 278, but it is not commented upon in that opinion. We have examined the record in that case and find that the issue was submitted in the language of the excerpt, supra, and to which the opposing litigant objected and sought a new trial partly for that alleged error. The question was therefore

squarely submitted to this court and the opinion in that case tacitly approved the instruction so given.

The necessary mental capacity to enter into a contract is measured by the same rule, i. e., capacity sufficient "to know the nature, character and effect of the transaction in which he was engaged at the time." In the Florence case, the validity of a gift was involved, and it appears to be an established rule that it requires a higher degree of mental capacity to make a contract at arm's length with an opponent, than it does to enter into a gift transaction involving no combativeness to obtain an advantage.

Moreover, one may be incompetent to continuously "manage his estate" which involves continuous supervision, and constant vigilance to prevent its reckless and purposeless dissipation, and to guard against fraud and greed of others seeking to become possessed of it, yet be perfectly competent to enter into a single transaction. Therefore, while Mr. Everly may have been incompetent to manage, protect and guard against such inroads on his meager estate, yet he may have possessed in a lucid interval sufficient mental capacity to enter into a single transaction which he appears to have matured in his mind and which, in the circumstances, was a most just, equitable and reasonable one. His wife would be left, without such survivorship arrangement, with but a meager sum to support her the rest of her life. They had lived in peace, harmony and happiness, so far as the record shows, for thirty-seven years, and were deprived of children to cheer them throughout their life and to look after their welfare in their old age. It was, therefore, extremely natural that he should have matured the sane idea of providing that his wife should take the remainder of his bank deposit account left at his death. If he had made a will to that effect his wife still could not during his life check against the deposits and he, perhaps, was—at least some of the time—unable to do so. If he did not so provide his wife would be left with only that amount that the law bestowed upon her and the remainder, if any, would go to only collateral kindred, all of which emphatically calls for the direction of the jury's attention to the condition of Mr. Everly's mind at the immediate time when he entered into it. The instruction of the court being at variance with that conclusion it necessarily follows that it was clearly erroneous, and the

court is directed on another trial, if one should be had, to instruct the jury as herein indicated.

Inasmuch as a new trial might be had the defendant should be permitted to prove what debts besides the funeral expenses and the cost of the grave monument his decedent (his wife) had to pay, or did pay, before her death, and all of such debts, together with his wife's distributive share should be subtracted from the amount of the deposits at the date of the husband's death, provided it should be again found that the husband was incompetent to enter into the survivorship transaction. On the other hand, if it should be found that he was competent to do so, then the petition should be dismissed.

Wherefore, for the reasons stated, the judgment is reversed, with directions to sustain the motion for a new trial and for proceedings consistent herewith.

The Whole Court sitting.