## CONNERS v. EBLE.

Court of Appeals of Kentucky.

June 25, 1954.

Robert E. Hogan, Louisville, for appellant.

J. W. Clements, Louisville, for appellee.

DUNCAN, Justice.

The judgment below cancels a contract between the parties and an irrevocable will executed pursuant thereto. It further adjudges the restoration to appellee of $2,625, subject to a credit of $420, representing money paid and the value of furniture delivered to appellant under the terms of the contract.

Mrs. Conners, the appellant, about 44 years of age, operated a nursing home at 1807 Shady Lane in Louisville, Kentucky. She also worked as a practical nurse at St. Agnes Hospital in Louisville. The appellee, Mrs. Eble, is 62 years of age, a widow, and was a resident of Evansville, Indiana, at the time of the incidents leading to this litigation.

Through the Sister Superior of St. Agnes Hospital, Mrs. Eble wrote Mrs. Conners on March 5, 1949, requesting information about the nursing home which she was operating. Mrs. Eble was desirous of obtaining lodging in some nursing home, and in the letter, she described herself as a widow with no children, 62 years of age, and a Catholic. At that time, the parties were complete strangers. Some correspondence followed, and Mrs. Conners made a visit to Mrs. Eble at Evansville. The latter had about decided not to take up residence in Mrs. Connors' nursing home, but was finally persuaded by a letter written on March 29, 1949, in which Mrs. Conners stated that the money she expected to receive from Mrs. Eble was to be used to promote a home for aged Catholic women. Mrs. Eble came to Louisville on April 2, 1949, and about a week later, Mrs. Conners called her attorney, and requested him to come to her home and discuss the preparation of the documents in question. The conference was held, and Mrs. Eble signed the contract and will in the attorney's office on the following day. In short, the contract provided that Mrs. Eble in return for board, lodging, and care in Mrs. Conners' nursing home for the balance of her life was to pay $2,500 in cash and to execute an irrevocable will, leaving any and all her property of whatsoever kind and nature to Mrs. Conners. It further provided that all household furniture owned by Mrs. Eble, subject to her right to its use, was to become the property of Mrs. Conners.

Following the execution of the contract and will, Mrs. Eble lived at the nursing home until June, 1949, when she voluntarily returned to Evansville. It appears from her testimony that she was dissatisfied with conditions in the home, and Mrs. Conners agreed that she should leave.

Among other grounds for cancellation, it is contended that Mrs. Eble did not have sufficient mental capacity to understand the agreement or its legal effect. Dr. Ruddick, of Evansville, Indiana, treated her over a period of eight or ten years for high blood pressure, arteriosclerosis, nervousness, obesity, and arthritis. In this connection, it should be noted that Mrs. Eble weighed approximately 280 pounds. Dr. Ruddick testified positively that she did not have the mental capacity necessary to understand and appreciate the nature of her written contract or will on the day the instruments were executed. It was shown that arteriosclerosis can, and often does, cause deterioration of the brain, and this fact was admitted by Dr. Garon, who testified for appellant. Dr. Garon disagreed with Dr. Ruddick only as to his conclusion that Mrs. Eble was mentally unsound at the time the contract was executed. However, he saw her for the first time on April 28, 1949, sixteen days after the instruments were executed, and examined her on only five different occasions. These two doctors were the only expert witnesses who testified concerning appellee's mental condition. The effect of high blood pressure and arteriosclerosis upon the brain has been considered by this Court in Moore's Adm'r v. Edwards, 248 Ky. 517, 58 S.W.2d 915; Stege v. Stege's Trustee, 237 Ky. 197, 35 S.W.2d 324; and Kentucky Electric Development Co.'s Receiver v. Head, 252 Ky. 656, 68 S.W.2d 1.

Appellant correctly asserts that the courts will not lightly set aside an executed contract. Lausman v. Brown, 293 Ky. 95, 168 S.W.2d 579. However, it is equally well settled that this Court will carefully scrutinize transactions between persons who from the very nature of the circumstances occupy unequal positions. Bracken v. Johnson, Ky., 249 S.W.2d 149; Gross v. Courtley, 161 Ky. 152, 170 S.W. 600. To create a valid, enforceable contract, there must be a voluntary, complete

assent by the parties having capacity to contract. Stege v. Stege's Trustee, supra. The test of legal capacity to contract is the ability to understand and appreciate the consequences of the particular transaction. There must be a meeting of the minds to effect assent, and there can be no meeting of the minds where either party to the agreement is mentally incapable of understanding the consequence of his acts. Johnson v. Sands, 245 Ky. 529, 53 S.W.2d 929. Everly's Adm'r v. Everly's Adm'r, 295 Ky. 711, 175 S.W.2d 376. We think the evidence supports the finding of the Chancellor that appellee did not have the mental capacity to enter into the contract or execute the will

In addition to mental incapacity, there were other grounds which justified the court in cancelling the agreement. It appears that Mrs. Conners is no longer ready, able and willing to perform her part of the agreement. Since Mrs. Eble left, Mrs. Conners has sold the premises where the home was operated and no longer is licensed to operate a nursing home. She also has cancelled the hospital policy which she was required to maintain under the terms of the contract.

A third reason which would sustain the finding of the Chancellor is the lack of good faith on the part of appellant. All of the negotiations leading to the execution of this contract make it apparent that appellee was a devout Catholic and was anxious to spend the remainder of her life with people of the same faith, and to that end, she wanted to enter a home dominated by Catholic influence. Correspondence between the parties makes it clear that appellee's decision to come to Louisville was directly influenced by appellant's letter of March 29, in which she stated that the money received from appellee was to be used to promote a home for aged Catholic women. Subsequent events have demonstrated that appellant never entertained the slightest intention of promoting such a home.

Upon any of the grounds indicated, the judgment properly cancelled the documents in question. It, therefore, is affirmed.