LIlly BASTIN, Administratrix of the Estate of George F. Clark, Deceased, Appellant,

v.

Stella SMITH, Appellee.

Court of Appeals of Kentucky.

Sept. 30, 1955.

Fritz Krueger, Morris E. Burton, Somerset, for appellant.

John G. Prather, Russell Jones, Somerset, for appellee.

STEWART, Chief Justice.

This action was instituted below to set aside a gift inter vivos on grounds of mental incapacity and undue influence. At the conclusion of appellant's evidence the trial judge directed a verdict in favor of appellee, Stella Smith. The sole ground urged for reversal is there was a bona fide question of fact for the jury's determination on the mental capacity of the donor to make the gift.

On May 19, 1950, George F. Clark, now deceased, in company with appellee, Stella Smith, his daughter, went to the Citizens National Bank of Somerset and transferred his entire bank account of $5,966.27 to her. Clark moved to appellee's home in 1949 and remained with her most of the time until his death in 1951. Another daughter of Clark's qualified as administratrix of his estate and instituted this action in behalf of the estate.

The testimony covers a period just before Clark's wife died on October 3, 1949, until just before he passed away on August 22, 1951. Clark died at the age of seventy-six some fifteen months after the gift was made. In order to determine the correctness of the lower court's ruling that Clark was mentally capable of making the gift we must examine the testimony. Although pleaded by appellant, no question of undue influence is involved, inasmuch as no proof was introduced on this issue.

The only person who testified he observed Clark on the date the gift was con-

summated was appellant's witness, Bob Newell, the assistant cashier of the bank. According to him, he was the officer who transferred the account from Clark to appellee, and he also stated he had always waited on Clark when he came to the bank. When asked if Clark had sufficient mental capacity to transact his own business, he replied: "He seemed perfectly all right, just like he was other times." He added that shortly before Clark died he came to the bank and wanted some of the money he had previously given his daughter, but upon being told he had transferred all of it to appellee, he left without objection.

Eight other witnesses, all laymen, appearing on behalf of appellant, testified they believed Clark did not possess requisite sanity when he made the gift to appellee. They advanced various explanations for their opinions. A summary of the reasons given why they thought Clark did not have mind and memory to carry on his financial affairs is: He would become confused in his thinking when he carried on a protracted conversation. His memory would lapse and he would repeat himself when he talked at length. According to one witness, he would show his deceased wife's ring over and over again, forgetting each time he had previously exhibited it. Another witness testified Clark got lost once, although he was only a quarter of a mile from his home, and he had to assist him to get his bearings. On occasions he mistook his 31-year-old granddaughter for the latter's mother, the granddaughter testified.

Two facts stand out in appellant's testimony when it is reviewed in its entirety. One is that seven of the eight witnesses last mentioned stated Clark would seem rational at times and at other times his mind would appear to wander off. The other is that no witness was able to say what the state of Clark's mind was on the date of the gift, except, as has been noted, the assistant cashier of the bank. As a matter of fact, no witness was able to place the mental condition of Clark closer than two or three months from the date

of the gift. Some of the witnesses, it is true, testified to his mental fitness during the last two years of his life, but their testimony does not disclose whether it approximated the time the gift was made. It is also significant that no doctor was introduced to sustain appellant's contention that Clark lacked sanity to handle his affairs at the time he transferred his bank account to appellee.

Although we have held that evidence of incompetency on occasions previous or subsequent to the date of the transaction under attack is admissible as bearing on the mental capacity of the donor at that time, Everly's Adm'r v. Everly's Adm'r, 295 Ky. 711, 175 S.W.2d 376, we believe in the case at bar it was vitally necessary to establish that Clark's mind was unbalanced, if such was actually the case, at or very near the day the gift was consummated. Here we have a donor who appeared to be unquestionably rational at times, according to the great weight of the testimony of appellant's witnesses, and for this reason we conclude the evidence introduced by appellant is too remote from the date of the execution of the gift to establish Clark's mental incapacity on that occasion. In Smith v. Gilligan's Adm'r, 276 Ky. 533, 124 S.W.2d 798, evidence of flightiness in thinking, incoherency in speech and the habit when talking of changing from one subject to another, which existed in February, 1936, when the gift sought to be set aside occurred in December, 1935, was held not sufficient to show mental incapacity.

Moreover, we are of the opinion that the testimony, taken as a whole, does not make out a case of mental impairment upon the part of Clark. In Dixon v. Dixon, 236 Ky. 608, 33 S.W.2d 611, 613, where evidence somewhat similar to that developed in this case was involved, this Court made this observation: "Inability to name all of one's relatives, the habit of changing from one subject to another, and occasional forgetfulness, are so common to all of us that, considered singly or altogether, they offer a very un-

substantial basis that one of whom. these things are said is incompetent to make a deed."

It appears to us that appellant failed to sustain the burden placed upon her to prove Clark's mental impairment at the time the gift was consummated.

Wherefore, the judgment is affirmed.