RENDERED: APRIL 3, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1560-MR

LP COLUMBIA KY, L.L.C. D/B/A
SIGNATURE HEALTHCARE AT
SUMMIT MANOR REHAB &
WELLNESS CENTER; AND
SIGNATURE HEALTHCARE, L.L.C.                                    APPELLANTS


                        APPEAL FROM ADAIR CIRCUIT COURT
v.                      HONORABLE JUDY VANCE MURPHY, JUDGE
                        ACTION NO. 20-CI-00077


ESTATE OF WINFRED COWAN, BY
AND THROUGH ITS
ADMINISTRATRIX, DENESA
MCCANN; BILLIE B. CROSBY, BY
AND THROUGH HIS ATTORNEY-
IN-FACT, DEBRA HARRELSON;
DONNIE MELSON, AS
ADMINISTRATOR OF THE ESTATE
OF EDNA MELSON; ESTATE OF
ADDIE DERRINGER, BY AND
THROUGH ITS ADMINISTRATRIX,
AMANDA WETHINGTON; ESTATE
OF ANNA MARIE HELM, BY AND
THROUGH ITS ADMINISTRATOR
LARRY HELM; ESTATE OF
CARLINA HARRISON, BY AND
THROUGH ITS ADMINISTRATRIX,
JENNIFER WOLSEY; ESTATE OF
CAROLYN SUE MCGAHA, BY AND

THROUGH ITS ADMINISTRATRIX,
VICKIE HATCHER; ESTATE OF
EMMA RODGERS, BY AND
THROUGH ITS ADMINISTRATOR,
DONNIE RAY SMITH; ESTATE OF
SANDRA R. SHARPE, BY AND
THROUGH ITS EXECUTRIX,
KATHY DOWNEY; ESTATE OF
VIRGINIA LEE ROWE, BY AND
THROUGH ITS ADMINISTRATRIX,
LISA WALKUP; AND NOREEN
HARMON, BY AND THROUGH HER
POWER OF ATTORNEY, CLIFFORD
HARMON                                                                    APPELLEES


OPINION AFFIRMING IN PART,
REVERSING IN PART,
VACATING IN PART, AND REMANDING

** ** ** ** **

BEFORE:  CETRULO, ECKERLE, AND L. JONES, JUDGES.

ECKERLE,[1] JUDGE:  Appellants, LP Columbia KY, L.L.C. d/b/a Signature

Healthcare at Summit Manor Rehab & Wellness Center, and Signature Healthcare,

L.L.C. (hereinafter and collectively, "Signature") seek review of the Adair Circuit

Court's order, dated November 27, 2024.  The appealed order vacated a prior order

granting Signature's motion to compel arbitration on all underlying claims, and

instead only granted the motion as to three Appellees, denied it as to the remaining

---

[1] This case was originally assigned to Judge James Lambert.  Due to his retirement, the case was very recently reassigned.

eight Appellees, and declined to stay the entire judicial proceedings pending arbitration. Signature challenges the Circuit Court's decision to vacate its prior order; the denial of its motion to compel eight Appellees and, if applicable, their wrongful-death beneficiaries, to arbitrate; and the declination to issue a complete stay pending arbitration.

After careful review and consideration, we do not reach the issue of whether the Circuit Court erred in vacating its prior order because it is beyond the scope of this limited interlocutory appeal. Regarding the Circuit Court's denial of Signature's motion to compel arbitration with eight Appellees, we affirm as to the wrongful-death claims, but we reverse the denial on all other claims as to Sharpe[2] and vacate and remand as to the remaining seven Appellees for reconsideration of Signature's third-party beneficiary claim. Finally, we affirm the Circuit Court's denial of Signature's motion for a complete stay of the proceedings.

## I. Factual and Procedural History

Appellees or their decedents were all residents of Signature Healthcare at Summit Manor Rehab & Wellness Center, and they allege injuries arising from Signature's negligence and/or reckless conduct, negligence *per se*, violation of Kentucky Revised Statute ("KRS") 216.515, and breach of contract.

---

[2] We have elected to refer to Appellees solely by their last names or the last name of the decedent to avoid confusion and for conciseness.

Additionally, eight Appellees (Cowan, Rowe, Rodgers, Derringer, Harrison, McGaha, Helm, and Sharpe, by and through their estates) also brought claims of wrongful death. Wrongful-death claims are distinctive from personal injury and negligence claims, because, although brought by a decedent's estate, the actions are on behalf of the decedent's statutory wrongful-death beneficiaries, not the estates themselves. *Ping v. Beverly Enterprises, Inc*., 376 S.W.3d 581, 597 (Ky. 2012).

Signature sought to compel arbitration on all claims, asserting that Appellees, either personally or by an authorized representative, had each executed a valid arbitration agreement with it.[3] On April 1, 2022, the Circuit Court granted Signature's motion as to Appellee, Derringer's Estate, because Derringer, unlike the other Appellees, had personally signed the arbitration agreement. The Circuit Court stated that it would reconsider the motion to compel as to the remaining ten Appellees after Signature provided proof of each signatory's authority to execute the arbitration agreements.

In July 2023, Signature renewed its motion to compel arbitration and further requested that the judicial proceedings be stayed pending arbitration.

---

[3] There are four different versions of the arbitration agreement. A general recitation of the terms is unnecessary because Appellees do not dispute that, if valid, the arbitration agreements would apply to their claims for negligence and/or reckless conduct, negligence *per se*, violation of KRS 216.515, and breach of contract. We discuss the impact of the arbitration agreements on the wrongful-death claims *infra*.

Signature argued that the arbitration agreements for Crosby, Helm, Cowan, Sharpe, and Rowe were enforceable because each was signed by the respective attorney-in-fact authorized to act pursuant to a Power of Attorney ("POA") instrument. Signature also broadly claimed that, even if all of the representatives lacked the authority to execute the arbitration agreements on Appellees' behalf, because they also executed the agreements in their respective individual capacities, Appellees were nonetheless bound as third-party beneficiaries.

Appellees filed both a response and a supplemental response. Appellees conceded that, under the applicable precedent, Crosby and Helm were required to arbitrate their claims. However, Appellees disputed that the POAs for Cowan and Sharpe authorized their attorneys-in-fact to execute the arbitration agreements or that Rowe's POA was even applicable since it was signed a day after the arbitration agreement, and there was no evidence of ratification. As to the claim that Appellees were nonetheless third-party beneficiaries of the arbitration agreements, Appellees disputed that the representatives had benefitted from the agreements.

Signature then filed a reply in support of its motion. Therein, Signature raised the additional argument that the representatives of Cowan, Rowe, Rodgers, Derringer, Harrison, McGaha, Helm, and Sharpe were required to arbitrate their personal wrongful-death claims because they executed the

agreements in their individual capacities. It also made the cursory argument that to the extent that there were any statutory, wrongful-death beneficiaries other than these representatives, federal preemption and public policy grounds require that they too should be compelled to submit to arbitration.

Special Judge Dan Kelly, sitting for Judge Judy Vance Murphy, held a hearing on Signature's motion on October 10, 2023. On January 24, 2024, Judge Kelly issued a "[Proposed] Order Granting Motion to Compel Arbitration and Staying Action Pending Arbitration," which included no findings of fact or conclusions of law.

On February 20, 2024, Appellees sought to alter, amend, or vacate the arbitration order, citing in support Kentucky Rule of Civil Procedure ("CR") 59.05. Appellees argued that the arbitration order was based on manifest errors of law or fact and, alternatively, that the Circuit Court needed to amend the order to include findings of fact and conclusions of law. Opposing the motion, Signature argued that CR 59.05 was inapplicable because the arbitration order was not a final order. It further contended that, regardless, there was no *bona fide* reason to vacate the arbitration order because Appellees had not presented any new basis for relief. Signature, however, did not oppose the Circuit Court making findings of fact and conclusions of law to the extent that the amendments did not alter the disposition of the motion.

Judge Vance Murphy returned to bench and took the motion under submission. On November 27, 2024, the Circuit Court issued the order on appeal. Therein, the Circuit Court concluded that the January 24, 2024, order granting Signature's motion to compel arbitration and to stay the proceedings contained errors of law and vacated it pursuant to Appellees' CR 59.05 motion.

The Circuit Court then addressed Signature's motion to compel arbitration and stay the proceedings anew. The Circuit Court determined that Signature had failed to sustain its burden that the arbitration agreements purportedly executed on behalf of Cowan, Melson, Harrison, McGaha, Rodgers, Sharpe, Rowe, and Harmon (hereinafter referred to collectively as "the Litigation Appellees") by their respective representatives were enforceable. Specifically, the Circuit Court concluded that Cowan's, Sharpe's, and Rowe's POAs did not authorize their representatives to agree to arbitration on each of their behalf, and that the representatives were not third-party beneficiaries to the arbitration agreements. Ultimately, the Circuit Court denied the motion to compel in part as to the Litigation Appellees and granted it in part as to the claims of Crosby and Helm. As for the stay, the Circuit Court denied the motion as to the Litigation Appellees, stating that no direct authority mandated that it be granted, and that to do so based only on the fact that a minority of Appellees were required to arbitrate would unfairly punish the majority.

Signature now appeals challenging the Circuit Court's determinations that: (1) there was a *bona fide* basis to vacate the January 2024 order compelling arbitration on all claims; (2) the Litigation Appellees were not bound by the arbitration agreements as third-party beneficiaries; (3) Cowan, Sharpe, and Rowe did not authorize or ratify the actions of their attorneys-in-fact; (4) the wrongful-death claimants were not required to arbitrate; and (5) it was not required to stay all judicial proceedings.

## II. Analysis

### A. Ripeness and the issue of whether the Circuit Court erred by vacating its January 24, 2024, arbitration order

Signature argues that the Circuit Court abused its discretion in granting Appellees' CR 59.05 motion to vacate its January 24, 2024, order and asserts that we must reverse, effectively reinstating the prior order compelling arbitration on all claims. Because the issue is not properly before the Court on this interlocutory appeal, we will not address its merit.

Appellees did not raise any jurisdictional challenge, but jurisdiction is a threshold issue that a Court must determine for itself. *Childers v. Albright*, 636 S.W.3d 523, 526 (Ky. 2021). As a rule, only final orders are appealable, and Appellate Courts lack jurisdiction to consider a lower Court's interlocutory rulings. *Long v. Dep't of Revenue*, 718 S.W.3d 868, 878 (Ky. 2025). The order granting Appellees' CR 59.05 motion is interlocutory because it does not fully resolve the

-8-

claims or rights of any of the parties. CR 54.02(1) ("[A]ny order . . . which adjudicates less than all the claims or the rights and liabilities of less than all the parties . . . is interlocutory and subject to revision at any time before the entry of [a final judgment].").

Despite the absence of a final judgment, this interlocutory appeal is nonetheless authorized by KRS 417.220, which permits immediate review from an order denying an application for arbitration. The scope of an interlocutory appeal, however, is subject to "strict parameters," and our review is limited "to consideration of the issue giving rise to the interlocutory appeal and nothing more." *Long*, 718 S.W.3d at 878 (internal quotation marks omitted) (citing *Commonwealth, Cabinet for Health & Family Servs., Dep't for Medicaid Servs. v. Sexton ex rel. Appalachian Reg'l Healthcare, Inc.*, 566 S.W.3d 185, 190 (Ky. 2018) and *Hensley v. Haynes Trucking, L.L.C.*, 549 S.W.3d 430, 436 (Ky. 2018)).

Signature's claim that the Circuit Court abused its discretion in amending its prior order is outside the scope of whether the Trial Court erred by refusing to compel arbitration. Accordingly, this issue is beyond our jurisdiction in this limited, interlocutory appeal, and we cannot reach it. Appellate resolution of this issue will have to await a full, final appeal on the merits.

B. Whether the Circuit Court erred when it denied Signature's motion to compel the Litigation Appellees to arbitrate their claims of negligence and/or reckless conduct, negligence *per se*, violation of KRS 216.515, and breach of contract

At issue is whether the Circuit Court erred in denying Signature's motion to compel arbitration on the claims of negligence and/or reckless conduct, negligence *per se*, violation of KRS 216.515, and breach of contract brought by the Litigation Appellees. Signature argued that the arbitration agreements executed by these appellees' representatives were enforceable because: (1) three of the Litigation Appellees (Cowan, Rowe, and Sharpe) were bound by their duly authorized attorneys-in-fact and (2) that, regardless, all eight of the Litigation Appellees were bound as third-party beneficiaries to the contracts between their respective representative and Signature. We will first address the latter claim.

1. Error in the analysis of whether the Litigation Appellees were bound by the arbitration agreements as third-party beneficiaries

The third-party beneficiary doctrine is an exception to the general rule that, "[o]rdinarily, the obligations arising out of a contract are due only to those with whom it is made [, and] a contract cannot be enforced by a person who is not a party to it or in privity with it[.]" *Phoenix American Adm'rs, L.L.C. v. Lee*, 670 S.W.3d 832, 838 (Ky. 2023) (quoting *Presnell Constr. Managers, Inc. v. EH Constr., L.L.C.*, 134 S.W.3d 575, 579 (Ky. 2004)). In its motion to compel, citing *Ping*, 376 S.W.3d at 595-96, Signature argued that the arbitration agreements were

valid contracts made with the individual representatives that were nonetheless binding on the Litigation Appellees as they were the intended third-party beneficiaries.

Seemingly misapprehending the argument, Appellees responded by denying that *the representatives* who signed the agreements were third-party beneficiaries thereto, instead of addressing the Litigation Appellees, as the facility's residents who were receiving care, as Signature argued. The Circuit Court then adopted Appellees' reasoning, stating, "that the individual fiduciaries and/or beneficiaries are not third-party beneficiaries to the subject arbitration agreements as contemplated by that established contract doctrine." On appeal, both Signature and Appellees have renewed their respective arguments about whether the third-party-beneficiary doctrine applies.

Because the order on appeal misapplies the third-party-beneficiary doctrine, the Circuit Court committed a clear, reversible error of law. Accordingly, we vacate this portion of the Circuit Court's order. On remand, the Circuit Court shall consider whether a valid contract existed between the Litigation Appellees' representatives in their individual capacities and Signature and, if so, whether the Litigation Appellees themselves were thereby bound as third-party beneficiaries.

2. The determination whether the representatives for Cowan and Rowe were authorized to execute the arbitration agreements and the conclusion that Sharpe's representative did not have the necessary authority

The party seeking to compel arbitration has the initial burden of establishing the existence of a valid agreement to arbitrate. *Ping*, 376 S.W.3d at 590. Whether an agreement exists is governed by state law rules of contract formation. *Id.* It is a fundamental principle of contract formation that "[t]o create a valid, enforceable contract, there must be a voluntary, complete assent by the parties having capacity to contract." *Conners v. Eble*, 269 S.W.2d 716, 717-18 (Ky. 1954). An attorney-in-fact can bind its principal to an arbitration agreement if granted that authority by the POA instrument. *Cambridge Place Grp. v. Mundy*, 617 S.W.3d 838, 840 (Ky. 2021).

In *Ping*, the Kentucky Supreme Court set forth the following guidance on the construction of a POA:

> The scope of [authority is] left to the principal to declare, and generally that declaration must be express. [E]ven a "comprehensive" durable power would not be understood as implicitly authorizing all the decisions a guardian might make on behalf of a ward. Rather, we have indicated that an agent's authority under a power of attorney is to be construed with reference to the types of transaction expressly authorized in the document and subject always to the agent's duty to act with the "utmost good faith." *Wabner* [*v. Black*, 7 S.W.3d 379, 381 (Ky. 1999)]. This is consistent with section 37 of the *Restatement (Second) of Agency*, which provides that[:]

-12-

> (1) Unless otherwise agreed, general expressions used in authorizing an agent are limited in application to acts done in connection with the act or business to which the authority primarily relates.
>
> (2) The specific authorization of particular acts tends to show that a more general authority is not intended.
>
> . . . "Unless otherwise agreed, authority to conduct a transaction includes authority to do acts which are incidental to it, usually accompany it, or are reasonably necessary to accomplish it." *Restatement (Second) of Agency* § 35 (1958). [It is a] fundamental rule that a written agreement generally will be construed "as a whole, giving effect to all parts and every word in it if possible." *City of Louisa v. Newland*, 705 S.W.2d 916, 919 (Ky. 1986).

376 S.W.3d at 592.

The scope of a POA is a question of law that we review *de novo*. *Id.* at 590. Applying these principles, we will address Signature's arguments.

a.) The Cowan POA

Denesa McCann, Cowan's attorney-in-fact, signed a mandatory arbitration agreement upon Cowan's admission to Signature's facility. The Cowan POA provides that Denesa McCann had the:

> *full power, right and authority* for us [sic] and in my name, place and stead, *to take charge of and manage my day to day business affairs*, including selling, transferring, encumbering, and conveying any and all of my property, both real and personal, and to execute and deliver any and all necessary and proper deeds, bills of

sale or other instruments of transfer, also, including paying bills and collecting accounts receivable, including suing for same, and including entry into any and all lock boxes held by me; and our attorney-in-fact may endorse checks made payable to me and obtain the proceeds thereof for deposit to my savings account for my use and benefit, *as I myself, might do*, as well as invest and reinvest all property which I may have an interest in, *except only that under this Power of Attorney my agent, and attorney-in-fact may not give away any of my property, real or personal*.

Signature argues that the italicized language (emphasis added) is the type of broad grant of authority that the Kentucky Supreme Court has held includes the execution of an arbitration agreement, citing in support *Extendicare Homes, Inc. v. Whisman*, 478 S.W.3d 306 (Ky. 2015), *reversed in part and vacated in part*, 581 U.S. 246 (2017)[4] (the Clark POA) and *GGNSC Frankfort, L.L.C. v. Richardson*, 581 S.W.3d 590, 591-95 (Ky. App. 2019). Appellees disagree with this construction. Instead, they assert that the POA is limited to Cowan's business affairs and argue that *Wellner*, *supra*, and *Genesis Healthcare, L.L.C. v. Stevens*, 544 S.W.3d 645, 651 (Ky. App. 2017), hold that authority thus limited does not encompass a pre-dispute arbitration agreement.

---

[4] Signature actually cited *Kindred Nursing Centers Ltd. Partnership v. Wellner*, 533 S.W.3d 189, 192 n.4 (Ky. 2017), wherein the Court offered an extremely brief summary of its analysis of the Clark POA in *Whisman*. Because our analysis goes beyond the cursory summary, we have cited *Whisman*.

We will begin our analysis with a review of the Clark and Richardson POAs that Signature argue favorably compare with the Cowan POA and require the conclusion that McCann's execution of the arbitration agreement on Cowan's behalf was authorized.

The Clark POA began by endowing his attorney-in-fact with the "full power for me and in my name, place, and stead, in her sole discretion, to transact, handle, and dispose of all matters affecting me and/or my estate in any possible way." *Whisman*, 478 S.W.3d at 317. The POA further provided that, without "limiting or derogating from this general power," the attorney-in-fact was authorized to take various, specified actions related to Clark's property and personal business and, finally, generally to "do and perform for me and in my name all that I might do if present." *Id.* at 317-18.

The Richardson POA set out "various decision-making powers regarding her financial affairs, health care, and real and personal property." *Richardson*, 581 S.W.3d at 591. Additionally, in a separate paragraph in bold and capitalized font, the POA provided that Richardson's attorney-in-fact could "generally do and perform for me all that I may do if acting in my own person." *Id.*

The sweeping grants of authority in *Clark* and *Richardson* are distinguishable from the terms of the Cowan POA which, we agree with Appellees,

demonstrates a primary purpose of permitting McCann to manage Cowan's property and financial affairs. Therefore, to be authorized, the arbitration agreement must be incidental or reasonably necessary to manage Cowan's property and financial affairs, and Kentucky Courts have repeatedly held that a pre-dispute arbitration agreement waiving the principal's constitutional rights does not fall within this limited authority. *See Ping*, 376 S.W.3d at 592; *Whisman*, 478 S.W.3d at 324-25; *Wellner*, 533 S.W.3d at 194. Neither we nor the Trial Courts are permitted to discount this binding authority.

Based on the above, the Circuit Court correctly concluded that Cowan was not compelled to arbitrate his claims based on McCann's actions as his attorney-in-fact. The Circuit Court will determine on remand whether Cowan was nevertheless bound by the agreement as a third-party beneficiary.

b.) The Sharpe POA

Kathy Downey, Sharpe's attorney-in-fact, signed an optional arbitration agreement when Downey was admitted into Signature's facility. Sharpe's POA provided Downey with:

> full power for me and in my name and stead, to make any contracts on personal property I may now or hereafter own, to receive and receipt of any money which many now or hereinafter be due me[;] to retain, *make and sign any and all* checks, *contracts or agreements*; defend suits concerning my property or rights, *and generally do and perform for me and in my name all that I might do if present*; and I hereby adopt and ratify all of the acts of

-16-

my said attorney, done in pursuance of the power granted as fully as if I were present acting in my own proper person, provided, however, that my said attorney is not to bind me as surety, guarantor or endorser for accommodation or give away any of my estate whatsoever.

I further authorize my said Power of Attorney to sell any real estate and/ or personal property that I may own and to execute any all deeds or documents necessary to transfer ownership thereof.

. . .

I hereby authorize my Power of Attorney to make all decisions and sign any and all documents necessary to enter me into any health facility or to do whatever is necessary for the furtherance of my health and safety.

Relying on the italicized language, Signature similarly argues that the POA was a broad grant of authority. Appellees maintain that the POA was limited to property and finance matters and further argue that the prohibition against giving away any of Sharpe's estate precludes concluding that Downey had the authority to execute this optional agreement.

We acknowledge that this issue is a closer call than the Cowan POA, as the scope of the granted authority is not well-defined. On balance, we are persuaded by Signature's argument that the Sharpe POA is not limited to property and financial issues. We find compelling the language of the POA that specifically addresses contracts for Sharpe's personal property interests and then separately authorizes any and all contracts and agreements as well as the general right to do as

Sharpe herself would do. We are also unconvinced that the POA's prohibition against giving away Sharpe's estate is relevant. A donation implies that Sharpe receives no benefit; the arbitration agreement equally bound both parties to its terms, and we decline to hold that arbitration is valueless. Accordingly, we reverse the Circuit Court's order denying Signature's motion to compel arbitration and to stay the proceedings as to Sharpe's claims of negligence and/or reckless conduct, negligence *per se*, violation of KRS 216.515, and breach of contract.[5]

### c.) The Rowe POA:

An optional arbitration agreement was signed by Lisa Walkup on March 9, 2020, presumably when Rowe was admitted to Signature's facility. A day later, Rowe executed a POA that authorized Walkup "to act in [Rowe's] capacity and on [her] behalf concerning all matters including but not limited to my financial, personal, and medical affairs."

Signature argued to the Circuit Court that Rowe had ratified Walkup's signing of the arbitration agreement on her behalf by executing the POA granting

---

[5] Our holding has no applicability to the wrongful-death claim by Sharpe's estate. In a footnote, Signature suggested that Sharpe, via Downey, bound all statutory beneficiaries to arbitrate their wrongful-death claims. Signature acknowledged that this proposition is contrary to the express holding in *Ping*, 376 S.W.3d at 599, but asserted without support that federal preemption has ensued, and the Court should otherwise reconsider the holding on public policy grounds. As to preemption, it is not this Court's function to craft a litigant's arguments. *See Hadley v. Citizen Deposit Bank*, 186 S.W.3d 754, 759 (Ky. App. 2005). We therefore decline to address Signature's wholly undeveloped claim. As for the request that we reconsider *Ping's* interpretation of law, "[t]he Court of Appeals is bound by and shall follow applicable precedents established in the opinions of the Supreme Court[.]" Supreme Court Rule ("SCR") 1.030(8)(a).

Walkup broad authority one day later. Additionally, Signature noted that neither Rowe nor Walkup as her attorney-in-fact rescinded the arbitration agreement within the 30 days permitted by the terms of the contract. Appellees disputed that the agreement had been ratified as there was no evidence Rowe was even aware of it, citing *Kindred Nursing Centers Ltd. Partnership v. Brown*, 411 S.W.3d 242, 250 (Ky. App. 2011). The Circuit Court agreed and denied Signature's motion to compel arbitration. On appeal, Signature has reiterated the argument it made to the Circuit Court, citing no authority in support of its position that ratification occurred.

"[A] principal who was not a party to an agreement may become bound by its terms if it later adopts and affirms the agreement and the agent initially entered the agreement on behalf of the principal." *Britt v. Univ. of Louisville*, 628 S.W.3d 1, 6 (Ky. 2021). "[R]atification is, in effect, the after the fact approval of conduct[.]" *Saint Joseph Healthcare, Inc. v. Thomas*, 487 S.W.3d 864, 874 (Ky. 2016) (quoting *University Med. Ctr., Inc. v. Beglin*, 375 S.W.3d 783, 794 (Ky. 2011)). A principal may ratify an unauthorized act of an agent expressly by written or spoken word or impliedly from his or her acts and conduct constituting assent to the act in question. *Id.* Ratification must be proven, and Signature, as the party alleging it applies, bears the burden of proof. *See Britt*, 628 S.W.3d at 6.

There is no allegation of express ratification, and we conclude that Signature has failed to establish that Rowe impliedly ratified the arbitration agreement. Though Rowe subsequently granted Walkup authority broad enough to permit executing the arbitration agreement, and Rowe did not rescind the contract, neither fact implies her assent to Walkup's action because there is no claim that Rowe even knew of the wholly optional agreement. Finally, Walkup's actions are immaterial because ratification may only be implied from the acts of the principal. For these reasons, the Circuit Court did not err in denying Signature's motion to compel arbitration based on Walkup's alleged authority as Rowe's attorney-in-fact. On remand, the Circuit Court will determine whether Rowe was nevertheless bound to the arbitration agreement as a third-party beneficiary.

3. <u>The denial of Signature's motion to compel arbitration on the wrongful-death claims of those representatives that Signature asserts signed the arbitration agreement in their individual capacities</u>

Signature argues that the Circuit Court erred in failing to compel arbitration on the wrongful-death claims of the representatives who signed the arbitration agreements for Cowan, Rowe, Rodgers, Harrison, McGaha, and Sharpe because the arbitration agreements bound the signatories, who were all representatives of the respective Appellees, in their individual capacities. Signature, however, has not referred this Court to the location in the record that it ever asserted that the signatories to the arbitration agreements are in fact the

wrongful-death beneficiaries of Appellees. It is not the function of this Court to scour the record in support Signature's undeveloped argument. *Dennis v. Fulkerson*, 343 S.W.3d 633, 637 (Ky. App. 2011). Accordingly, Signature has failed to state any argument that would support reversing the Circuit Court's order denying its motion to compel arbitration on these claims, and we therefore affirm to that limited extent.

### 4. Stay on the Litigation Appellees' claims

Signature argues that a complete stay on the judicial proceedings is mandatory if any claims in the action are subject to arbitration, and the Circuit Court therefore erred in denying its motion for a stay as to the Litigation Appellees' claims. Signature cites in support KRS 417.060(4) and Section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C.[6] § 1-16.[7] We begin with a review of the former.

> KRS 417.060(4) states:
>
> Any action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or an application therefor has been made under this section; or if the issue is severable, the stay may be with respect thereto only. When the application is made in such

---

[6] United States Code.

[7] The Kentucky Supreme Court has held that the FAA, which applies to arbitration provisions in contracts evidencing a transaction involving interstate commerce, "almost certainly applies" to the arbitration agreements like those at issue herein. *Ping*, 376 S.W.3d at 589.

action or proceeding, the order for arbitration shall include such stay.

Because the statute specifically provides that a stay may be limited to arbitrable issues capable of being severed, it does not support Signature's position that a complete stay on all claims is mandatory. Signature has cited no authority that has held otherwise.

Section 3 of the FAA provides:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

However, and as Signature notes in its brief, federal law has not interpreted the statute as requiring a complete stay when there are both arbitrable and non-arbitrable claims. In *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23, 103 S. Ct. 927, 939, 74 L. Ed. 2d 765 (1983), the United State Supreme Court stated that "[i]n some cases, of course, it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the [Trial Court] as a matter of its discretion to control its docket." *See also Mendez v. Puerto Rican Int'l Cos.*, 553 F.3d 709 (3d Cir.

2009).  Thus, Signature's claim that the Circuit Court failed a duty to grant a stay is without merit.

As to whether the Circuit Court acted within its discretion in denying the complete stay, the issue is not properly before us on this limited, interlocutory appeal.  Relevantly, KRS 417.220 provides that an immediate appeal may be taken from an order denying an application to compel arbitration, but it does not identify an order denying a stay of litigation.  We have reviewed Signature's claim insofar as it argued that the order pursuant to KRS 417.060 compelling arbitration on some of Appellees' claims was required to stay the entire proceedings before the Circuit Court and found it to be without merit.  To go further would exceed the scope of our limited review.  Therefore, the Circuit Court did not commit a reversible error by declining to order a complete stay of the judicial proceedings, and we affirm.

III.    Conclusion

For the foregoing reasons, the Adair Circuit Court's order is AFFIRMED IN PART as to its denial of Signature's motion to compel arbitration on the wrongful-death claims brought by the estates of Cowan, Harrison, McGaha, Rodgers, Sharpe, and Rowe and the denial of Signature's motion for a complete stay of the proceedings.  The Circuit Court's order is REVERSED IN PART as to the denial of Signature's motion to compel arbitration on the negligence and/or reckless conduct, negligence *per se*, violation of KRS 216.515, and breach of

contract claims regarding Sharpe. On remand, the Circuit Court shall enter an order compelling Sharpe to arbitrate these claims and addressing the request for a stay of the proceedings. Finally, the Circuit Court's order is VACATED IN PART to the extent that it denies Signature's motion to compel arbitration on the negligence and/or reckless conduct, negligence *per se*, violation of KRS 216.515, and breach of contract claims of Cowan, Melson, Harrison, McGaha, Rodgers, Rowe, and Harmon. On REMAND the Circuit Court should consider anew whether these Appellees were bound to the arbitration agreements as third-party beneficiaries.

ALL CONCUR.

| BRIEFS FOR APPELLANTS: | BRIEF FOR APPELLEES: |
|---|---|
| John David Dyche<br>Louisville, Kentucky | John A. Bahe<br>Patrick E. Markey<br>Louisville Kentucky |
| John C. Miller<br>John B. Jessie<br>Campbellsville, Kentucky | Derrick G. Helm<br>Jamestown, Kentucky |